**POLSINELLI LLP**
WESLEY D. HURST (SBN: 127564) (Designated Counsel for Service- Eastern District L.R. 182(c)(1))
whurst@polsinelli.com
ALYSSA M. ENGSTROM (SBN: 313553)
aengstrom@polsinelli.com
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: 310.556.1801
Facsimile: 310.556.1802

*Attorneys for Defendants Lincare Holdings Inc., Lincare Inc., and Lincare Pharmacy Services, Inc.*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| KENNETH EICHMAN, an individual, and on behalf of classes of similarly situated individuals,<br><br>        Plaintiff,<br><br>vs.<br><br>LINCARE HOLDINGS INC., a Delaware corporation, LINCARE INC., a Delaware corporation, LINCARE PHARMACY SERVICES, INC., a Delaware corporation, and DOES 1 to 10, inclusive<br><br>        Defendants. | CASE NO.<br><br>**CLASS ACTION**<br><br>**DEFENDANTS LINCARE HOLDINGS INC., LINCARE INC., AND LINCARE PHARMACY SERVICES, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, 1446, AND 1453**<br><br>(Kings County Superior Court Case No. 22C-0225) |

## <u>NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT</u>

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendants Lincare Holdings Inc. ("Lincare Holdings"), Lincare Inc. ("Lincare"), and Lincare Pharmacy Services, Inc. ("Lincare Pharmacy")

84574916.2

(collectively, the "Defendants"), remove to the United States District Court for the Eastern District of California the action filed by Kenneth Eichman, ("Plaintiff") in the Superior Court of the State of California for Kings County, styled *Kenneth Eichman, an individual, and on behalf of classes of similarly situated individuals, v. Lincare Holdings Inc., a Delaware corporation, Lincare Inc., a Delaware corporation, Lincare Pharmacy Services, Inc., a Delaware corporation, and Does 1 to 10, inclusive*, Case No. 22C-0225 (the "State Court Action").

## JURISDICTION AND VENUE

1.      This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a) and 1446(a).

## FACTUAL AND PROCEDURAL BACKGROUND

3.      On June 21, 2022, Plaintiff filed a Complaint for Damages, Injunctive and Equitable Relief (the "Complaint") against Defendants in the Superior Court of the State of California for Kings County to initiate the State Court Action.  Plaintiff filed the Complaint as a putative class action.

4.      On July 6, 2022, Plaintiff served Lincare and Lincare Pharmacy with a Summons and a copy of the Complaint via process server.  Subsequently, Plaintiff served Lincare Holdings with a Summons and a copy of the Complaint via process server on July 7, 2022.  Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice of Removal as **Exhibit A**.

84574916.2

5.      This removal is timely because this Notice of Removal is filed within 30 days of service of process on Lincare and Lincare Pharmacy, the first defendants served in the State Court Action.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

6.      This Court has original jurisdiction over this action under CAFA. Section 1332(d) provides that a district court shall have original jurisdiction of a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million.  Section 1332(d) further provides that where, as here, the putative class members are citizens of the state in which the action was filed, the defendant must be a citizen of a different state.  § 1332(d)(1)-(2)(A).

7.      As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), the State Court Action may be removed to federal court under CAFA because (a) this action is pled as a class action; (b) the putative class includes more than one hundred (100) members; (c) members of the putative class are citizens of a state different from that of Defendants; and (d) the matter in controversy, in the aggregate, plausibly exceeds the sum or value of $5 million, exclusive of interest and costs.[1]

## THE ACTION IS PLED AS A CLASS ACTION

8.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial

---

[1] Defendants reserve the right to provide evidence in support of jurisdiction in the event Plaintiff seeks remand. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (if, after removal, plaintiff contests that CAFA jurisdictional requirements are satisfied, then "both sides submit proof and the court decides, by a preponderance of the evidence").

84574916.2

procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

9.    Plaintiff brings this action as a "class action" and seeks class certification under California law pursuant to California Code of Civil Procedure § 382.  (Compl. ¶ 99).  Because class action lawsuits under California law are substantially similar to class actions under Federal Rule 23, the first CAFA requirement is satisfied.  *See, e.g., Pickman v. Am. Exp. Co.*, No. C 11-05326 WHA, 2012 WL 258842, at *2 (N.D. Cal. Jan. 27, 2012); (Compl. ¶ 99) ("Plaintiff brings this action as a class action…").

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

10.    Plaintiff alleges that "[o]n or around June 6, 2022, Lincare issued a notice (the "Notice") providing…public notice of 'a security incident that may have involved the disclosure of certain personal information.'"  (Compl. ¶ 19) (footnote omitted).  Plaintiff further alleges that "[i]n the Notice, Lincare notified consumers that on September 26, 2021…it had 'identified unusual activity on certain systems within its network.'  After its investigation, Lincare confirmed that 'systems may have first been accessed on September 10, 2021' through September 29, 2021."  (Compl. ¶ 20) (footnote omitted).  Plaintiff claims that as a result of Defendants' alleged "gross negligence and failure to adequately protect the Breach Victims' PII and PHI, cyber criminals were able to steal everything they could possibly need to commit nearly every conceivable form of identity theft and medical identity theft and wreak havoc on the financial and personal lives of potentially millions of individuals."  (Compl. ¶ 3).

11.    Plaintiff purports to bring this action on behalf of a nationwide class. (Compl. ¶ 99).  Plaintiff defines the nationwide class as "[a]ll persons in the United States and its territories whose Personal Identifying Information and Protected Health

84574916.2

Information were compromised by the Data Breach."  *Id.*  Alternatively, Plaintiff proposes alternative classes by state or groups of states, defined as "[Name of State] Subclass: All residents of [name of State] whose PII and PHI was compromised by the Data Breach."  (Compl. ¶ 101).

12.    Plaintiff alleges that "[t]he proposed Class is so numerous that joinder of all members is impractical.  Defendants reported to the U.S. Department of Health & Human Services Office of Civil Rights that approximately 500 individuals were affected by the Data Breach."  (Compl. ¶ 104) (footnote omitted).  Plaintiff also alleges that the security incident could impact "the financial and personal lives of potentially millions of individuals."  (Compl. ¶ 3).

13.    Thus, the number of alleged putative class members exceeds the statutorily required minimum of one hundred (100).

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

14.    Pursuant to 28 U.S.C. § 1332(d)(2)(A), the district courts shall have original jurisdiction of "a class action in which…*any member of a class of plaintiffs* is a citizen of a State different from *any defendant*." (emphasis added); *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006) ("One way to satisfy minimal diversity is by demonstrating that any member of a class of plaintiffs is…a citizen or subject of a foreign state and any defendant is a citizen of a State.") (internal citations omitted).

15.    As alleged in the Complaint, Plaintiff "is a citizen and resident of the (*sic*) Hanford, California, in Kings County."  (Compl. ¶ 9).  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Accordingly, Plaintiff is a citizen of the State of California.

16.     Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center."  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters."  *Id.*  "The public often (although not always) considers it the corporation's main place of business."  *Id.* at 1193.

17.     Plaintiff alleges in his Complaint that all of the Defendants "are Delaware corporations with their principal place of business in Clearwater, Florida, in Pinellas County."  (Compl. ¶ 10).  Lincare Holdings, Lincare, and Lincare Pharmacy, as conceded by Plaintiff, are each incorporated in Delaware.  Additionally, the "nerve center" for all three Defendants is in Florida—each of the Defendants maintains its headquarters in Florida.  Moreover, the Defendants' officers direct, control, and coordinate corporate activities from Florida.  Consequently, the principal place of business for each Defendant is located in Florida as alleged by Plaintiff.  Because each of the Defendants is incorporated in Delaware and each maintains its principal place of business in Florida, the Defendants are citizens of Delaware and Florida for diversity jurisdiction purposes.[2]

18.     Additionally, for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(b)(1).

---

[2] Plaintiff's conclusory allegation in paragraph 10 of the Complaint that Defendants "[u]pon information and belief . . . are citizens of California" is negated by Plaintiff's concession in the same paragraph that the Defendants "are all Delaware corporations with their principal places of business in Clearwater, Florida."  Again, a corporation is deemed to be a citizen of any State in which it has been incorporated and of the State where it has its principal place of business.  28 U.S.C. § 1332(c).  And because the Defendants are all incorporated in Delaware and maintain their principal places of business in Florida, all are citizens of Delaware and Florida (and not California) for purposes of diversity jurisdiction.

84574916.2

19.     Minimal diversity of jurisdiction is established pursuant to CAFA because Plaintiff is a citizen of California and Defendants are citizens of Delaware and Florida.

20.     Furthermore, because none of the Defendants are citizens of California, the "local controversy" exception to CAFA is inapplicable.  *See Aviles v. Quik Pick Express, LLC*, Case No. CV-15-5214-MFW (AGR), 2015 WL 5601824, at *3 (C.D. Cal. Sept. 23, 2015) ("local controversy" exception requires, *inter alia*, that "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed" *and* at least one defendant "is a citizen of the State in which the action was originally filed" (quoting 28 U.S.C. § 1332(d)(4)(A)(i)(I)-(II)(cc))).

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD

21.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied.  The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.  *Dart Cherokee*, 574 U.S. at 90.   Evidence is not required under 28 U.S.C. § 1446(c)(2)(B) unless the Plaintiff challenges, or the Court questions, Defendants' allegations regarding the amount in controversy.  *Id.* [3]

---

[3] By contending that the amount in controversy in this case is above $5 million, Defendants do not concede that they are liable to Plaintiff or the putative class and do not concede that damages or any other relief may be awarded.  Defendants continue to reserve all of their rights, remedies, defenses and objections to the Complaint.

84574916.2

22.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy plausibly exceeds $5 million.[4]

23.     The amount in controversy is first determined by reviewing the allegations of the operative complaint.  *See Anderson v. Seaworld Parks & Entm't Inc.*, 132 F. Supp. 3d 1156, 1160 (N.D. Cal. 2015) ("When determining the amount in controversy, the Court first considers whether it is 'facially apparent' from the complaint that the jurisdictional minimum has been satisfied.").  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (internal citation removed).

24.     Plaintiff alleges that "[a] study by Experian found that the average total cost of medical identity theft is 'about $20,000' per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage."  (Compl. ¶ 76).  As set forth in paragraph 12 above, Plaintiff also alleges that at least 500 individuals were potentially impacted by the September 2021 security incident.  Taken together, these two allegations alone equate to $10 million of potential impact (500 times $20,000) alleged on the face of the Complaint, which is all that is needed for purposes of the amount in controversy requirement.  To meet the removal criteria, there is no requirement for Defendants to add to these allegations or to speculate whether the pleaded "potential impact" should be considered actual impact to some degree, either now or in the future.

---

[4] The amounts set forth in this Notice of Removal are solely for the purpose of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendants deny liability, deny that Plaintiff is entitled to recover any amounts, and deny that a class can properly be certified in this matter.

84574916.2

25.     In addition to alleged damages for medical identity theft, the Complaint also seeks recovery of other unspecified actual damages, statutory damages, and punitive damages.  (Compl. ¶¶ 8, 135, 141, 150, 161, 169, 175, 187, 188, 196, and 207 (Prayer for Relief)).  No allegations in the Complaint allow Defendants to calculate the amount of these other alleged damages.  However, Plaintiff's allegations regarding such damages further underscore that the amount in controversy plausibly exceeds $5 million.

26.     Moreover, when the underlying substantive law provides for the award of attorneys' fees, a party may include that amount in its calculation of the amount in controversy.  *Gault G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  Thus, the Court may take into account reasonable estimates of attorneys' fees when analyzing any disputes over the amount in controversy.  *See Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002).  Plaintiff has sought attorneys' fees "as allowable by law, including CCRA, Cal. Civ. Code § 1798.84(g), UCL, Cal. Bus. & Prof. Code § 17082, CMIA, Cal. Civ. Code 56.35…."  (Compl. Prayer for Relief, p. 38).  Attorneys' fees should therefore be included in analyzing the amount in controversy.

27.     In the Ninth Circuit, twenty-five percent (25%) of the award has been used as a "benchmark" for attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Using this benchmark, attorneys' fees, when added to the amounts discussed above, further increase the amount in controversy for alleged liability exposure above the jurisdictional minimum for removal.

84574916.2

28.     In sum, the diversity, class size, and amount in controversy requirements of CAFA are satisfied.  Defendants have properly removed the State Court Action to this Court.[5]

## **CONSENT TO REMOVAL**

29.     Pursuant to 28 U.S.C. § 1446, all Defendants have joined in this Notice of Removal and consent to removal of the State Court Action to this Court.

## **NOTICE OF INTERESTED PERSONS**

30.     Pursuant to Federal Rule of Civil Procedure 7.1, Defendants are filing a Notice of Interested Persons concurrently with this Notice of Removal.

## **NOTICE**

31.     As required by 28 U.S.C. § 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to Plaintiff and are filing a copy of this Notice of Removal with the Clerk of the Superior Court for the State of California for Kings County.

///
///
///
///

---

[5] Although this Court is the proper venue for removal, Defendants do not concede that this is the proper venue to litigate this action.  Defendants intend to seek transfer of this action to the United States District Court for the Middle District of Florida, Tampa Division, under 28 U.S.C. § 1404(a).  Additionally, Defendants intend to seek dismissal of the Complaint under Federal Rule of Civil Procedure Rule 12(b)(1) based on Plaintiff's lack of Article III standing.  Defendants recognize that the question of Article III standing is an evolving and unsettled area of the law (particularly in the context of data breach litigation) in light of several recent cases, including, without limitation, the United States Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).  However, because all of the requirements for removal under CAFA are satisfied here for the reasons set forth above, Defendants possess an objectively reasonable basis for removing this case to federal court notwithstanding that they intend to argue that Plaintiff lacks the Article III standing required to proceed in federal court.

84574916.2

**WHEREFORE** Defendants hereby remove the State Court Action from the Superior Court of the State of California for the County of Kings, and request that further proceedings be conducted in this Court as provided by law.

Dated:  August 4, 2022

**POLSINELLI LLP**

/s/ *Wesley D. Hurst*

By:   WESLEY D. HURST

*Attorneys for Defendants Lincare Holdings Inc., Lincare Inc., and Lincare Pharmacy Services, Inc.*

NOTICE OF REMOVAL

84574916.2